## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ART & DRAMA THERAPY INSTITUTE, INC., et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Civil Action No. 13-cv-1604 (TSC) |
| DISTRICT OF COLUMBIA, et al., | ) ) ) |
| Defendants. | ) ) ) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Art & Drama Therapy Institute, Inc. ("ADTI") and its owners, Margaret M.

Dickerson and Sirkku Hiltunen, are suing Defendants the District of Columbia and two of its

agencies (collectively the "District") for a variety of claims in connection with the District's

termination of ADTI as a Medicaid waiver services provider.  (ECF No. 25-1, Corrected Third

Am. Compl.).  The District has filed a motion to dismiss all counts for lack of subject-matter

jurisdiction and for failure to state a claim upon which relief may be granted.  (ECF No. 12,

Def.'s Mot. to Dismiss; Minute Entry, May 11, 2015).  For the following reasons, the court

GRANTS the motion and dismisses the case.  Plaintiffs' multiple requests for leave to file

amended complaints are DENIED.[1]

---

[1] Since Defendants filed their motion to dismiss, Plaintiffs have twice sought leave to amend the complaint.  (ECF No. 16, Pl.'s Mot. Seeking Leave to File Second Am. Compl.; ECF No. 24, Pl.'s Mot. Seeking Leave to File Third Am. Compl.).  The proposed Third Amended Complaint was subsequently corrected.  (ECF No. 25-1, Corrected Third Am. Compl.).  Although leave to amend should generally be freely granted, leave to amend may be denied if the proposed amendment is futile.  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Because each iteration of the proposed amended complaint is similar to the next (*Compare* ECF No. 11, Am. Compl. *with* ECF No. 16-1, Second Am. Compl., *and* ECF No. 24-1, Third Am. Compl.), the court's opinion proceeds by assuming that the Corrected Third Amended Complaint (ECF No. 25-1) is properly before the court and addresses whether that complaint could survive a motion to dismiss.  Because the court ultimately concludes that the Corrected Third

# BACKGROUND

## I.    Factual Background

ADTI is a D.C. corporation providing healthcare services to individuals with intellectual and developmental disabilities.  (Corrected Third Am. Compl. ¶ 7; *see also* ECF No. 12-2, Def.'s Ex. 2 ("Human Care Agreement")).  Its owners, Margaret M. Dickerson and Sirkku Hiltunen, claim to be "employed" by the District of Columbia as Medicare providers.  (Corrected Third Am. Compl. ¶ 10).  Both are elderly, and claim to be members of a minority class.  (*Id.* ¶¶ 2, 9 (identifying one individual as "Black Indian" and one of "Northern European dissent [sic]")).  The Corrected Third Amended Complaint appears to allege that Defendants, the District of Columbia and two of its agencies—the Department of Disability Services ("DDS") and the Department of Health Care Finance ("DHCF")—engaged in a pattern of conduct designed to selectively and disproportionately regulate ADTI and its owners on the basis of their age, in violation of the Age Discrimination in Employment Act, and national origin, in violation of 42 U.S.C. § 1983 (and certain D.C. anti-discrimination laws).  (*Id.* ¶ 2).

In particular, Plaintiffs allege that they were "arbitrarily"[2] selected for review under the DDS's formal Provider Certification Review ("PCR") process to begin on or around July 29, 2013.  (*Id.* ¶¶ 2, 18).  Prior to completion of that review, on or around August 12, 2013, Plaintiffs were allegedly placed on a "Do Not Refer List" and "Provider Watch List," along with other

---

Amended Complaint does not state a claim for relief, and because permitting future amendment would give the Plaintiffs a fifth bite at the apple, the court DENIES leave to file any amendments.

[2] Defendants point out that, far from being arbitrary, municipal regulations, including 29 D.C.M.R. § 4236.1 (2015), mandate "that DHCF 'shall perform ongoing audits to ensure that the provider's services for which Medicaid payments are made are consistent with efficiency, economy, quality of care, and made in accordance with federal and District rules governing Medicare.'"  (ECF No. 12, Def.'s Mot. to Dismiss at 6 n.8).  That regulation goes on to indicate that "[t]he audit process shall be *routinely conducted* by [DHCF] to determine, by statistically valid scientific sampling, the appropriateness of services rendered and billed to Medicaid and that services were only rendered to Medicaid-eligible individuals."  29 D.C.M.R. § 4236.2 (emphasis added).

elderly and minority service providers.  (*Id.* ¶¶ 2, 14-16).[3]  Defendants deny that allegation

outright.[4]  (Def.'s Mot. to Dismiss at 6 n.7).  According to Plaintiffs, however, that review went

forward—over Plaintiffs' objections—on October 21–23, 2013.  (Corrected Third Am. Compl. ¶

9).

Plaintiffs also allege a parallel pattern of "harassment" in connection with that review.

(*Id.* ¶ 23).  In particular, they claim that they were required to undergo a payroll audit and defend

against a variety of miscellaneous accusations including that the certificate of occupancy on their

premises had expired, and that they submitted untimely incident reports and compliance

documents.  (*Id.* ¶¶ 3, 22–25).  Again, Defendants deny these allegations outright, claiming that

"[n]otwithstanding [their] clear authority to conduct such an audit, [they] . . . *cancelled* the July

audit, and ha[ve] not since audited [Plaintiffs]."  (Def.'s Mot. to Dismiss at 6 n.8 (emphasis in

original)).  On October 19, 2012, the Defendants terminated fee-for-service treatment services

with Plaintiffs, causing them "significant economic loss and financial hardship."  (Corrected

Third Am. Compl. ¶ 26).

## II.     Regulatory Background

### 1.     *Generally*

---

[3] According to Plaintiffs, the statistics bolster their claims of discrimination.  Plaintiffs assert that a majority of the 20 providers on the "Do Not Refer List" are elderly, African-American, or both—and fourteen provide services to class members in an ongoing and unrelated class action lawsuit, *Evans v. Gray*, No. 76-cv-0293, alleging unconstitutional mistreatment of mentally handicapped patients at a certain D.C. area hospital.  (Corrected Third Am. Compl. ¶¶ 2, 15).  Likewise, 4 of the 6 providers on the "Provider Watch List" are elderly, while all 6 providers treat members of the *Evans* class.  (*Id.* ¶¶ 2, 16).  As a result, "Plaintiff[s] and similarly situated DDS services providers" were allegedly deprived "of control . . . and real property" in violation of their due process rights.  (*Id.* ¶ 2).

[4] The District disputes the truth of many factual allegations of Plaintiffs' complaint.  Although on a motion to dismiss the court must presume the truth of the allegations, it need not do so when allegations are flatly contradicted by material properly considered on a motion to dismiss.  *Redmon v. U.S. Capital Police*, No. 13-cv-1323, 2015 WL 682404, at *6 (D.D.C. Feb. 18, 2015) (citing *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)).  In this case, however, the court's opinion that Plaintiffs' claims are not adequately pled is not based on the disputed allegations.

Under the federal Medicaid program, the District of Columbia pays healthcare providers for a range of services to low-income individuals, and the federal government reimburses the District for a share of those expenditures. *U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs., Inc.*, 778 F. Supp. 2d 37, 40 (D.D.C. 2011). "States have considerable flexibility in designing and operating their Medicaid programs, although they must comply with [certain] federal requirements." *Id.* (citing U.S. GOVERNMENT ACCOUNTABILITY OFFICE, GAO 06-862, MEDICAID THIRD-PARTY LIABILITY, FEDERAL GUIDANCE NEEDED TO HELP SATES ADDRESS CONTINUING PROBLEMS, at 2 (2006)) (quotation marks omitted). Among these requirements, the District, like all states, is required to have its Medicaid plan approved by the federal government. *Dist. of Columbia Hosp. Ass'n v. District of Columbia*, 224 F.3d 776, 777 (D.C. Cir. 2000).

To effectuate that plan, DDS—an agency housed within the larger Developmental Disabilities Administration ("DDA")—has been charged with leading and coordinating the collaborative efforts of District agencies to reform and regulate the system for care and habilitation services provided to residents with intellectual and other developmental disabilities. *See* D.C. OFFICIAL CODE §§ 7-761.03, .04(b). Specifically, it is required to "monitor the provision of all services and supports and investigate, remediate, and enforce quality standards for all services and supports, including Medicaid-funded services[.]" *Id.* § 7-761.05(5). To that end, it may "[e]stablish rules, quality standards, and policies for . . . [M]edicaid-funded services[,]" *id.* § 7-761.05(3), as well as issue regulations and execute contracts to meet its responsibilities under the law. *Id.* § 7-761.09.

## 2.    *Qualified Waiver Services*

While healthcare services are typically provided in medical institutions, states can request a "waiver" in their Medicaid plans, under Section 1915(c) of the Social Security Act, to allow for "payment for part or all of the cost of home or community-based services[.]"  42 U.S.C. § 1396n(c).  Under the waiver program, the District furnishes an array of services to assist Medicaid beneficiaries to live in the community and avoid institutionalization.  Plaintiff ADTI is one such provider of waiver services.

Under municipal regulations, waiver providers must meet an extensive list of qualifications, including requirements that they "[c]omply with all applicable District of Columbia licensure requirements" and "[e]nsure compliance with the provider agency's policies and procedures and DDS policies[.]"  29 DCMR §§ 1904.4(d), (k).  "Each Waiver provider shall allow appropriate personnel of DHCF, DDS and other authorized agents of the District of Columbia government . . . full access to all records during announced and unannounced audits and review."  *Id.* § 1909.1.

There are also extensive regulations governing how DDS may sanction waiver providers who fail to comply with the applicable regulations, including a mandated process for DDS to provide notice of proposed exclusion or termination from the waiver program.  29 DCMR § 1303.1.  Waiver providers aggrieved by DDS's determinations may request a hearing, and appeal adverse decisions.  *See id.* §§ 1311, 1313, 1316.

## JURISDICTION

Plaintiffs here assert federal question jurisdiction under 28 U.S.C. § 1331.  Plaintiffs also assert jurisdiction under 28 U.S.C. § 1343, which grants jurisdiction to federal District Courts to hear, among other things, any civil action "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured

by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States," *id.* § 1343(a)(3), or "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." *Id.* § 1343(a)(4).  The District of Columbia is deemed a "state" for purposes of the statute.  *Id.* § 1343(b)(1).  Accordingly, courts in this Circuit have construed this provision as providing an alternative or supplemental route to jurisdiction for plaintiffs' Section 1983 claims.  *See, e.g.*, *Earle v. District of Columbia*, 707 F.3d 299, 303–04 (D.C. Cir. 2012).

Finally, Plaintiffs invoke the court's supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367.

## PROCEDURAL HISTORY

Plaintiffs filed suit on or about October 20, 2013 alleging three counts.  (ECF No. 2, Compl.).  Plaintiffs subsequently filed a First Amended Complaint on October 26, 2013.  (ECF No. 11, First Am. Compl.).  Count I alleges a violation of the Age Discrimination in Employment Act ("ADEA") on the basis of age and national origin, 29 U.S.C. § 623(a)(1), and a constitutional tort under 42 U.S.C. § 1983.  Count II alleges a violation of the District of Columbia Human Rights Act ("DCHRA") for discrimination on the basis of age and national origin under D.C. Code §§ 1-2515, -2532.[5]  Count III alleges a separate violation of the DCHRA for retaliation.  *Id.* § 1-2525.[6]  Although Plaintiffs allude to it in previous filings, an additional Count IV appears for the first time in the Second and Third Amended Complaints.  (ECF No. 16-

---

[5] Plaintiffs' citations to D.C. Code §§ 1-2515 & -2532 appear to be erroneous, since those sections of the Code are non-existent under the current codification.  (Def.'s Mot. to Dismiss at 14 n.15).  Defendants have suggested that D.C. Code §§ 2-1402.21 and -1402.68 would be equivalents.  (*Id.*).

[6] Again, Plaintiffs' citation to D.C. Code § 1-2525 is apparently erroneous.  (*Id.*).  Defendants suggest that D.C. Code § 2-1402.61 is the equivalent under the current codification.  (*Id.*).

1, Second Am. Compl. ¶¶ 39–47; ECF No. 25-1, Third Am. Compl. ¶¶ 39–49).  Count IV alleges

a violation of 48 U.S.C. § 1983 for, among other things, the infringement of Plaintiffs' due

process rights under the Fifth Amendment as a result of "inaccurate or improper unreliable

evidence manufacture [*sic*] by District employees who were improperly overseen, trained, and

controlled in specifically how they carry out their functions."  (*Id.* ¶ 40).

Thereafter, Plaintiffs filed a motion for a Temporary Restraining Order ("TRO") in an

attempt to enjoin the Defendant's PCR.  Judge Rudolph Contreras, to whom this case was

previously assigned, denied that motion on October 22, 2013.  In particular, he noted that:

1.  Plaintiff has not shown that it is likely to succeed on the merits. It has
    presented insufficient evidence of discrimination as to age, race, or national
    origin. It is also unclear that the [ADEA] even applies to this case, as Plaintiff
    has not shown an employer-employee relationship at this time.

2.  Plaintiff has provided only speculation as to the harm that the District's annual
    [PCR] might cause. Given the administrative remedies available, Plaintiff has
    also not shown that such harm would be irreparable even if it were to come to
    fruition.

3.  It is in the District's and the public's interest for the PCR to go forward.
    Plaintiff has not shown that any third parties would be harmed by the PCR, or
    that the speculative harm to Plaintiff outweighs the District's interest in
    conducting the PCR.

(ECF No. 10, Order Den. Pl.'s Mot. for TRO).

Defendants moved to dismiss all counts, alleging a variety of procedural and substantive

defects in the First Amended Complaint.  (ECF No. 12, Def.'s Mot. to Dismiss).  In particular,

Defendants moved to strike all claims against DDS and DHCF under Fed. R. Civ. P. 12(b)(1),

since they are *non sui juris* and "it is well-settled that a department or agency of the District of

Columbia cannot sue or be sued in its own name in the absence of a statutory provision to that

effect."  (*Id.* at 3 n.2 (quoting *Whitehead v. Dist. of Columbia Child Support Servs. Div.*, 892 F.

Supp. 2d. 315, 319 (D.D.C. 2012) (citations omitted)).  Defendants moved to dismiss all other

counts under Rule 12(b)(6), citing two principal reasons.  First, that Plaintiffs' constitutional tort

claim is defective since "[P]laintiffs fail[ed] to plead the bare minimum necessary, *i.e.*, some

District 'policy or custom' that caused them constitutional injury."  (*Id.* at 5 n.5 (citing

*Bonaccorsy v. District of Columbia*, 685 F. Supp. 2d 18 (D.D.C. 2010)).  Second, that Plaintiffs'

discrimination and retaliation claims represent "a hodgepodge of incomplete theories and

unfounded allegations."  (*Id.* at 5).

Plaintiffs filed a brief Reply (ECF No. 15, Pl's Reply) on January 27, 2014, including

additional exhibits—a series of unsworn affidavits—that had not been filed with the original or

First Amended Complaints, and which purport to document Plaintiffs' repeated attempts to bring

"problems, concerns[,] and requests to the attention to [*sic*] DHCF" and others.  (ECF No. 15-2,

Pl.'s Ex. A; *see also* ECF No. 15-3, 15-4, 15-5, and 15-6).[7]  Plaintiffs concurrently moved for

leave to file a Second Amended Complaint.  (ECF No. 14).  This was the first of several attempts

to amend Plaintiffs' First Amended Complaint, (*see id.*; ECF No. 16; ECF No. 24), each of

which was opposed by Defendants.  (ECF No. 21; ECF No. 27).  Defendants filed a Response

(ECF No. 17, Def.'s Response) on January 6, 2014, suggesting that Plaintiffs' Reply failed to

address a number of Defendants' arguments, and as such could reasonably be deemed a

concession of those arguments under Circuit precedent.  *See, e.g.*, *Johnson v. Panetta*, 953 F.

Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and

construct the legal arguments available to the parties.'  To the contrary, perfunctory and

---

[7] Plaintiffs incorrectly suggest that Defendants' reliance on the TRO order in its Response was improper, since it goes beyond the "four corners of the Complaint," (ECF No. 15, Pl.'s Reply at 2), in spite of the fact that the proposed Corrected Third Amended Complaint references the TRO, (Corrected Third Am. Compl. ¶ 14), and it is well established that a court may consider "any documents either attached to or incorporated in the complaint." *Davis v. District of Columbia*, 949 F. Supp. 2d 1, 5 (D.D.C. 2013) (citing *E.E.O.C v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).  Moreover, it is well within the court's inherent powers to judicially notice prior or related proceedings in a matter currently before it. *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010) (citing 29 AM. JUR. 2D, EVIDENCE § 151 (2010); *see also Booth v. Fletcher*, 101 F.2d 676, 679 n.2 (D.C. Cir. 1938); 2 MCCORMICK ON EVIDENCE § 332 (6th ed. 2009)).

undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.") (citations omitted); *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 58 (D.D.C. 2012) ("It is not enough to mention a possible argument in the most skeletal way, leaving the Court to do counsel's work, create the ossature for the argument, and put flesh on its bones.  A litigant has the obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (quoting *Scheider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).  On January 22, 2014, Plaintiffs filed a Surreply, (ECF No. 20, Pl.'s Surreply), attaching additional new exhibits.  (*See* ECF No. 20-2, 20-3, 20-3, 20-4, and 20-5).  On March 24, 2014, Plaintiffs, without leave of court, supplemented that Surreply in a Supplemental Memorandum (ECF No. 23), again attaching additional new exhibits.  (*See* ECF No. 23-1 and 23-2).

Shortly thereafter, on June 2, 2014, the case was reassigned to the undersigned.  On November 21, 2014, the court denied without prejudice Defendant's Motion to Dismiss (ECF No. 12) and Plaintiffs' Motions for Leave to Amend (ECF Nos. 14, 16, 24) pending resolution of an issue regarding the good standing of Plaintiffs' counsel.  (Minute Order, Apr. 9, 2015).  With Defendant's motion fully briefed by all parties, and because the court's resolution of the pending motions will terminate this case, the court has determined to rule on the motions to dismiss. (Minute Order, May 11, 2015).[8]

## LEGAL STANDARD

In ruling on a motion to dismiss, a court "must accept as true all factual allegations contained in the complaint."  *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672,

---

[8] Although Plaintiffs' attorney submitted a certificate of good standing from the D.C. Court of Appeals, (*see* ECF No. 48, Ex. List), he is not currently in good standing in this court.  That fact notwithstanding and in consideration of the unusually lengthy procedural history of this case and the parties' obvious desire for finality, the court will rule on the motions to dismiss because the Plaintiffs have shown no desire to proceed with alternate counsel.  The court DENIES Plaintiffs' motion for leave to file a fourth amended complaint (ECF No. 49) because it is not filed by an attorney in good standing with this court.

681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (quotation marks omitted).  Hence, a court may not grant the motion "even if it strikes a savvy judge that . . . recovery is very remote and unlikely.  *See id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (quotation marks omitted).  "So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court may not dismiss." *Id.* (quoting *Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009)) (citations and quotation marks omitted).  A claim has facial plausibility when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

At the outset, the court must determine that it has jurisdiction to hear a case.  Normally, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  *Daniels v. United States*, 947 F. Supp. 2d 11, 16 (D.D.C. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  Even where the defendant has failed to raise or concedes subject matter jurisdiction, however, a court may still address the question *sua sponte* if it deems it necessary.  *Id.* at 17 (citing *Doe by Fein v. District of Columbia*, 93 F.2d 861, 871 (D.C. Cir. 1996)).  In reaching that determination, "a court need not limit itself to the allegations of the complaint." *Firearms Imp./Exp. Roundtable Trade Grp. v. Jones*, 854 F. Supp. 2d 1, 11 (D.D.C. 2012) (citing *Hohri v. United States*, 782 F.3d 227, 241 (D.C. Cir. 1986) (vacated on other grounds)).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question . . . ." *Id.* (quoting *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)) (quotation marks omitted).  In any event, a court is required "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Daniels*, 947

F. Supp. 2d at 17 (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)) (citations omitted).

## DISCUSSION

### I.   Subject Matter Jurisdiction

It has long been the rule in this District that departments or agencies of the District of Columbia are prohibited from suing or being sued in their own name absent a statutory provision to that effect.  *Whitehead v. Dist. of Columbia Child Support Servs. Div.*, 892 F. Supp. 2d 315, 319 (D.D.C. 2012) (citing *Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000)). *See also Milliner v. District of Columbia*, Civ. A. No. 92-187 (SSH), 1993 WL 837384, *1 (D.D.C. May 17, 1993) (citing *Hinton v. Metro. Police Dep't*, 726 F. Supp. 875 (D.D.C. 1989)) ("In the absence of *explicit* statutory authorization, bodies within the District of Columbia government are not suable as separate entities.") (emphasis added).  There is almost uniform agreement on this point.  *See Kundrat*, 106 F. Supp. 2d at 5 (providing a long string of cases to so hold).  In light of this well-established principle, the court dismisses all claims against Defendants DDS and DHCF, since they are departments or agencies of the District, and there is no explicit statutory authorization that allows them to be sued in their own name.

### II.   Rule 12(b)(6)

#### A.   *Plaintiffs' ADEA claim under Count I*

To state a claim for relief under the ADEA, a plaintiff must allege facts giving rise to a plausible inference of the existence of an employment relationship between the alleged employee and employer.  *Ghori-Ahma v. U.S. Comm'n on Int'l Relig. Freedom*, 969 F. Supp. 2d 1, 6 (D.D.C. 2013) (plaintiff "need only plead factual content from which this Court can reasonably infer that she was" an employee of defendant); *Konah v. District of Columbia*, 815 F. Supp. 2d

61, 70–71 (D.D.C. 2011).  In addition, a claim for relief pursuant to the ADEA may be brought

in federal court only after the plaintiff has exhausted his or her administrative remedies.  29

U.S.C. § 626(d)(1)(A).  Here, neither condition has been satisfied.  The court finds that Plaintiffs

fail to state a claim under the ADEA.[9]  Dismissal of Count I is therefore warranted for failure to

state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

1.    Plaintiffs are not "employees" under the ADEA.

To determine whether an individual is an "employee" for purposes of the ADEA, a court

must look at the "economic realities" of the relationship between the parties, using the twelve-

factor test established by the D.C. Circuit in *Spirides v. Reinhardt*.  613 F.2d 826, 831 (D.C. Cir.

1979); *Sherwood v. Evans*, 422 F. Supp. 2d 181, 184 (D.D.C. 2006).

The first and "most important factor" to consider is "the extent of the employer's right to

control the 'means and manner' of the worker's performance."  *Almutairi v. Int'l Broad. Bureau*,

928 F. Supp. 2d 219, 229–30 (D.D.C. 2013) (citing *Spirides*, 613 F.2d at 831).  To adequately

plead that element, Plaintiffs would need to allege facts supporting the inference that the District

had the "right to control and direct the[ir] work . . . 'not only as to the *result* to be achieved, but

also as to the *details* by which that result is achieved . . . .'" *Id.* at 231 (quoting *Spirides*, 613

F.2d at 831–32 (emphasis added)).  Other cases speak of "pervasive control[]."  *Redd v.*

*Summers*, 232 F.3d 933, 939 (D.C. Cir. 2000) ("Here the inquiry is whether the business is

exercising a degree of control that seems excessive in comparison to a reasonable client-

contractor relationship in the same circumstances.").

A trial court should also consider:

---

[9] The court addresses the adequacy of the Plaintiffs' allegations even though Plaintiffs failed to proffer any facts or
law in their Opposition, Surreply, or Supplemental Memorandum sufficient to rebut Defendants' arguments about
the ADEA, and as such the argument could be deemed conceded.  (*See* Def.'s Response at 2–4).

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual worked; (5) the method of payment; (6) the manner in which the work relationship terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays for social security taxes; and (11) the intention of the parties.

*Simms v. District of Columbia*, 587 F. Supp. 2d 269, 273 (D.D.C. 2008) (citing *Spirides*, 613 F.2d at 831–32).

Plaintiffs' proposed Corrected Third Amended Complaint asserts, upon information and belief, that Plaintiffs are District employees in light of the fact that the District "had the authority to hire, fire, and discipline the providers of disability services, including Plaintiff[s] herein." (Corrected Third Am. Compl. ¶ 12).  This allegation is plainly inadequate.  *See, e,g.*, *New Vision Photog. Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 26 (D.D.C. 2014) ("the mere ability to be hired, fired, or disciplined is not the legal standard for an employee; the proper consideration is multifaceted but primarily based on the extent of control exercised over the 'means and manner' of a person's work"); *Konah*, 815 F. Supp. 2d at 70–71 (allegations that plaintiff worked for a company that contracted with the District of Columbia were insufficient to establish that plaintiff was employed by D.C.).  Plaintiffs' only response is to add in their opposition to the motion to dismiss—but not to any proposed amended complaint—the conclusory statement that ADTI should be considered an "employee" since DDS administers "the PCR process and procedures [that] dictate the means and manner by which ADTI operates." (Pl.'s Reply at 4).  First, it is axiomatic that pleadings may not be amended by statements in opposition to a motion to dismiss.  *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citations omitted).  Second, even if the court were to

consider this additional allegation in considering the sufficiency of the Corrected Third Amended Complaint, the allegation would still be insufficient because it lacks any factual context demonstrating how the District controls the "means and manner" of ADTI's operation and how, if at all, that control crosses the line from regulation to employment. *New Vision Photog. Program, Inc.*, 54 F. Supp. 3d at 26 ("[n]o matter how exacting the regulatory burden on an industry, this does not render an agency charged with ensuring industry compliance an employer for purposes of the ADEA") (citing *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 572 (1st Cir. 2004)); *see also Cornish v. Dudas*, 715 F. Supp. 2d 56, 64 (D.D.C. 2010).

Moreover, as Defendant notes, the very terms of the relationship between the parties, as set forth in the contract between ADTI and the District, confirm that the District did not employ Plaintiffs within the meaning of the statute. (Def.'s Mot. to Dismiss at 12). According to the contract, ADTI provided worker's compensation and liability insurance, as well as insurance to cover any criminal activity by its employees. (Def.'s Ex. 2 at §§ F.9.10.4.1). Significantly, with regard to HIPAA compliance, the contract explicitly provides that ADTI "*will function as an independent contractor and shall not be considered an employee.*" (*Id.* § F.10.10.23 (emphasis added)). Although the terms of the contract are not necessarily dispositive in light of this Circuit's economic reality test, the parties' intent is a relevant factor of that test.[10] *Palmer v. Napolitano*, 867 F. Supp. 2d 120, 124–25 (D.D.C. 2012). Since Plaintiffs have not alleged any facts supporting their conclusory allegation that they are employees of the District of Columbia, they have failed to state a claim upon which relief can be granted.

---

[10] The proposed Corrected Third Amended Complaint alleges that Plaintiffs are employed by the District "via the Medicaid Provider Agreement." (Corrected Third Am. Compl. ¶ 10). The court may consider a document incorporated by reference into the complaint on a motion to dismiss without converting it into one for summary judgment. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The court "may also consider 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Bullock v. Donohoe*, No. 13-cv-1543, 2014 WL 5147550, at *2 (D.D.C. Oct. 14, 2014) (citations omitted)

## 2.     *Exhaustion of administrative remedies*

In order to bring a suit in federal court under the ADEA, an aggrieved party must exhaust his or her administrative remedies under the statute by first filing a claim with the EEOC and waiting at least 60 days before filing in federal court.  29 U.S.C. § 626(d)(1)(A).  Additionally, a District resident must also file a charge with the appropriate state agency—here the D.C. Office of Human Rights—before filing an ADEA action in federal court.  29 U.S.C. § 633(b); *see also Schuler v. PricewaterhouseCoopers, LLC*, 514 F.3d 1365, 1368 (D.C. Cir. 2008) ("Under section 633(b), 'resort to administrative remedies in deferral States by individual claimants is mandatory, not optional.'") (quoting *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758 (1979)).

Failure to exhaust administrative remedies is an affirmative defense under the ADEA.  *Latson v. Holder*, Civ. A. No. 14-371, 2015 WL 1056592, at *5 (D.D.C. Mar. 9, 2015).  Because it is an affirmative defense, a court may dismiss a plaintiff's case only when neither the complaint nor the documents referenced or incorporated by the complaint indicate that the plaintiff has successfully exhausted their administrative remedies.[11]

Here, none of the Complaints, including the proposed Corrected Third Amended Complaint, makes any mention of whether Plaintiffs filed a claim with the EEOC or the D.C. Office of Human Rights.  While the absence of any affirmative allegation of exhaustion may or may not suffice to establish the affirmative defense, Plaintiffs also submitted an "affidavit"[12] (ECF No. 15-2) chronicling correspondence and a number of meetings between Plaintiffs, as the

---

[11] To the extent a plaintiff affirmatively alleges the filing of an administrative charge, that administrative charge is deemed incorporated into the complaint and may be reviewed in a motion to dismiss.  *Hudson v. Children's Nat'l Med. Ctr.*, 645 F. Supp. 2d 1, 5 n.5 (D.D.C. 2009); *Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008).  Alternatively, an administrative complaint is a public record of which the court may take judicial notice.  *Koch v. Walter*, 935 F. Supp. 2d 164, 171 (D.D.C. 2013).

[12] The "affidavit" is electronically signed, undated, and not notarized.  The court assumes for purposes of this motion that a procedurally proper submission would have been substantively identical.

owner of ADTI, and representatives of the District.  Even ignoring its procedural deficiencies, that affidavit does not establish that Plaintiffs did what the ADEA requires plaintiffs to do before bringing suit: file a charge of discrimination with the EEOC and wait the requisite amount of time before filing in federal court.  29 U.S.C. § 626(d)(1)(A).[13]  To the contrary, the affidavit establishes only that Plaintiffs attempted to negotiate with the District, which does not fulfill the administrative exhaustion requirement.  Indeed, Plaintiffs concede that there has been no "final agency decision regarding ADTI and the PCR process."  (Pl.'s Reply at 5).

When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  The parties must have a "reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  Here, Defendants directly addressed these extraneous submissions (Def.'s Response at 6) and Plaintiffs cannot reasonably claim surprise.  Accordingly, for purposes of evaluating the Plaintiffs' failure to exhaust, the court treats the motion as one for summary judgment under Rule 56.  *Ahuja v. Detica, Inc.*, 742 F. Supp. 2d 96, 102 (D.D.C. 2010); *Highland Renovation Corp. v. Hanover Ins. Grp.*, 620 F. Supp. 2d 79, 82–83 (D.D.C. 2009).  Because there is no evidence that Plaintiffs fulfilled the procedural prerequisites to suit (in fact there is undisputed evidence that they did not), the court grants summary judgment in favor of the Defendants on the ADEA claim for failure to exhaust administrative remedies.

## B.      *Plaintiffs' constitutional tort claim under Count IV*

42 U.S.C. § 1983 establishes civil liability for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

---

[13] "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."

deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

Although a municipality is a "person" for purposes of section 1983, it "cannot be held liable . . .

on a *respondeat superior* theory." *Singletary v. District of Columbia*, 766 F.3d 66, 72 (D.C. Cir.

2014) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)) (quotation marks

omitted). Instead, the plaintiff must allege a municipal "policy or custom" that caused the

constitutional violation. *Id.* (citing *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C.

Cir. 2003)).

As a result, a plaintiff suing a municipality under section 1983 must allege not only a

violation of her rights under the Constitution or federal law, but also that the municipality's

custom or policy caused the violation. *Baker*, 326 F.3d at 1306. A municipality may be liable

under section 1983 for: (1) the establishment of a policy by the municipality that violates the

Constitution; (2) the actions of the highest officials responsible for setting policy; (3) a policy-

maker's adoption through a knowing failure to act on actions by subordinates that are so

consistent that they become custom; or (4) the municipality's failure to respond to a need, such

as training of employees, in such a manner as to show deliberate indifference to the risk that not

addressing the need will result in constitutional violations. *Id.* at 1306–07 (citations omitted).

The last prong amounts to a claim that the municipality "knew or should have known of the risk

of constitutional violations, but did not act." *Bell v. District of Columbia*, No. 14-cv-299, 2015

WL 757808, at *3 (D.D.C. Feb. 24, 2015) (citing *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir.

2011)). Deliberate indifference may be shown by a failure to train. *Id.*

Here, Plaintiffs allege a violation of their due process rights under the Fifth Amendment.

However, assuming *arguendo* that Plaintiffs did suffer a constitutional injury, they have failed to

identify a District of Columbia "policy or custom" which caused that injury. First, Plaintiffs

merely "disagree" with the District's argument that the Section 1983 allegations in the proposed

Corrected Third Amended Complaint are defective, but provide no basis for that disagreement.

That disagreement does not constitute an opposition to the argument, and the court would be

justified in treating the argument as conceded and dismissing on that basis. *Douglas v. Dist. of

Columbia Hous. Auth.*, 981 F. Supp. 2d 78, 85 (D.D.C. 2013); *Klayman v. Judicial Watch, Inc.*,

802 F. Supp. 2d 137, 148 (D.D.C. 2011).

Dismissal follows, however, even when the court addresses the issue.  Plaintiffs

separately contend, without explanation, that the Second Amended Complaint (and presumably

the proposed Corrected Third Amended Complaint) "covers" the pleading requirements for

stating a Section 1983 claim.  Plaintiffs' contention is incorrect.  (Pl.'s Reply at 3–4).  The

Second and Third Amended Complaints largely parrot the language of cases from this court,

alleging "improper[] overs[ight], train[ing], and control[]" of District employees in "how they

carry out their functions" pertaining to administration of the PCR, payroll audit, incident

management reporting, and facilities oversight functions.  (*See* Second Am. Compl. ¶¶ 40–42;

Corrected Third Am. Compl. ¶¶ 40–42).  Further, they allege the existence of a "custom, policy,

or practice of failing to oversee, train, and control its DDS Directors, DDS Service Coordinators,

and PCR TEAM [*sic*] members on the proper PCR testing of Medicaid Waiver Services

Providers and proper procedures for discharge of individuals, as evidenced by its DO NOT

REFER LISTS, and active refusal to not refer individuals to certain providers."  (Second Am.

Compl. ¶ 43; Corrected Third Am. Compl. ¶ 43).  But Plaintiffs fail to plead any facts regarding

the existence of such policy or procedure.  Plaintiffs cannot rely on vague and unsupported

allegations; there must be some factual basis for an inference of municipal liability.  *Grissom v.

District of Columbia*, 853 F. Supp. 2d 118, 123 (D.D.C. 2012) ("If filing a Complaint containing

the appropriate legal terms were sufficient, every plaintiff could state a claim against a municipality merely by throwing in the necessary keywords.").

Plaintiffs' only allegations regarding deliberate indifference point to testimony in September 2013 from two agents of the District responsible for overseeing the PCR. Plaintiffs contend this testimony shows that the District knew it had hired inadequately credentialed individuals and failed to train them. (Corrected Third Am. Compl. ¶ 47).[14] According to Plaintiffs, the fact that the District employed a nurse practitioner and a college graduate (who does not have a master's degree) demonstrates the District's indifference to the need to use adequately trained staff to oversee Medicare providers in a manner that did not violate Constitutional rights. Plaintiffs fail to allege any factual context showing that individuals in that position should have had more advanced degrees or certificates. In other words, Plaintiffs have pled nothing to support the inference that the District should hire, for instance, only those with Master's degrees in public administration or public health. To the contrary, the testimony indicates that one witness, Ms. Stachowiak, has over 30 years of experience working in the field of developmental disabilities and worked in quality management in Indiana in a capacity similar to the PCR. (ECF No. 23-1 at 10). She also testified that she has been to "many quality improvement conferences in which the discussion of how to evaluate quality is done." (*Id.* at 12-13). Nothing about this testimony suggests, on its face, deliberate indifference to the qualifications of those conducting the PCR.

Similarly, Plaintiffs allege that one witness' inability to define the term "identifier" is evidence of poor training, without providing any factual context of what the term means and why knowledge of its meaning is key to adequately overseeing the PCR. (Corrected Third Am.

---

[14] The allegation incorporates by reference excerpts of testimony provided as an exhibit to Plaintiffs' Supplemental Memorandum, ECF No. 23.

Compl. ¶ 47).  Finally, Plaintiffs allege more generally that the testimony shows a lack of training.  This is far from clear from the excerpted testimony incorporated into the Corrected Third Amended Complaint, and in fact appears to be contradicted by that testimony.  The witness indicated that "a reviewer doesn't go and do an independent review until they've been through a process by which we determined that they are interpreting the indicators correctly," (ECF No. 23-1 at 17), and that "reviewer training consists of reviewing the indicators with one of the senior review staff.  It involves looking at the waiver rules, becoming familiar with the waiver rules, reviewing the policies and procedures of DDS…and being quizzed on the policy and procedures of DDC."  (*Id.* at 17-18).  Plaintiff has alleged no facts that would support a reasonable inference that this training was constitutionally inadequate, and as such the claim must fail.

## III.    Plaintiffs' state law claims

Defendants moved to dismiss the remaining state law claims pursuant to Fed. R. Civ. P. 12(b)(6).  However, because the court is dismissing all federal claims, it will dismiss the state law claims for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  It is well settled that the court may decline to exercise supplemental jurisdiction *sua sponte* when the plaintiff's predicate federal law claims have been dismissed and there are no alternative means of establishing jurisdiction.  28 U.S.C. § 1367(c)(3); *see also Bello v. Howard University*, 898 F. Supp. 2d 213, 226 (D.D.C. 2012) (citing *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("[P]endent jurisdiction is a doctrine of discretion, not a plaintiff's right.")) (internal citations omitted).

Because Plaintiffs' two predicate federal-law claims have been dismissed and they cannot establish diversity of citizenship jurisdiction[15] pursuant to 28 U.S.C. § 1332, their state-law claims are dismissed without prejudice.

### CONCLUSION

For the foregoing reasons Defendants' motion to dismiss is **GRANTED**.  Plaintiffs' motions for leave to file amended complaints are **REOPENED** and **DENIED**.

A corresponding order will issue separately.

Date:  June 23, 2015

---

[15] Plaintiffs cannot establish diversity jurisdiction, since complete diversity between the parties is absent in this case. Plaintiffs are D.C. residents or domiciliaries, as are the Defendants.  (Corrected Third Am. Compl. at 1).