# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ART & DRAMA THERAPY INSTITUTE, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-01604 (TSC) |
| | ) | |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Art & Drama Therapy Institute ("ADTI")[1] and its owners Margaret Dickerson and Sirkku Hiltunen have moved for reconsideration[2] of the Court's June 23, 2015 Order (and accompanying Memorandum Opinion) which granted Defendants' motion to dismiss, denied Plaintiffs' motions for leave to file amended complaints, and dismissed the case.  In support of their motion, Plaintiffs argue that the court was mistaken about Plaintiffs' counsel Randy McRae's status as a member of the bar of this court and, as a result of that error, mistakenly declined to consider the merits of Plaintiffs' motion for leave to file a fourth amended complaint.

---

[1] The case caption on the motion identifies ADTI as the single plaintiff, though the body of the motion refers interchangeably to plaintiff and plaintiffs.  The court assumes the motion is made on behalf of all Plaintiffs.

[2] Plaintiffs cite Fed. R. Civ. P. 54(b) as authority permitting reconsideration.  (Mot. at 3).  That rule provides that the district court may "revise[] at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities" an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties."  The order the Plaintiffs seek to have the court reconsider, however, is not such an order – it terminated the case as to all parties.  Plaintiffs alternatively seek relief under Fed. R. Civ. P. 60, which authorizes the court to grant relief from a final order on the basis of mistake or newly discovered evidence.  Rule 59(e), which Plaintiffs also invoke, permits a motion to alter or amend judgment within 28 days of entry of that judgment.  Plaintiffs' motion was filed on the 30th day after entry of the Order.  However, Plaintiffs and Plaintiffs' counsel received notice of the court's order by mail, and the Rule 59 motion is therefore timely pursuant to Fed. R. Civ. P. 6(d), which adds three days to a deadline when service is accomplished by mail.

(Mot. at 2-3).  Plaintiff's contention is that, had the court considered "newly discovered"[3] facts (Mot. at 4) alleged in the proposed Fourth Amended Complaint, the court would have concluded that the Fourth Amended Complaint would withstand a motion to dismiss and granted leave to file it.

The court is not mistaken about Mr. McRae's status as a member of the bar of this court: he is currently suspended from membership.  *See* U.S. District Court, District of Columbia, *Bar Member/Attorney Search*, https://ecf.dcd.uscourts.gov/cgi-bin/attysrch.pl?lastname=McRae&firstname=Randy (last visited July 27, 2015).  To the extent Mr. McRae believes that this District's Committee on Grievances has suspended him on the basis of a factual error that is an issue for Mr. McRae to take up with the Committee. Alternatively, Mr. McRae appears to imply that his purported good standing as a member of the bar of the D.C. Court of Appeals and the U.S. District Court for the District of Maryland suffices to make him eligible to practice in this court.  (Mot. at 2-3).  However, the motion points to no authority in support of that contention.[4]

For the sake of efficiency, however, the court will assume for the purpose of reviewing the proposed Fourth Amended Complaint that it was filed by an attorney qualified to make that

---

[3] The "newly discovered" facts are in paragraphs 39 and 40 of the Fourth Amended Complaint, quoted in full *infra* at n. 6.  It is not clear how these facts were previously unavailable to the Plaintiffs when drafting their First, Second and Third Amended Complaints.

[4] Plaintiffs attached a certificate of Mr. McRae's good standing in the U.S. District Court for the District of Maryland to their motion.  (Mot. at 6).  The certificate bears a legend that it is "valid for 90 days from the date issued," but it is more than 90 days old.  (*Id.*).  More importantly, membership in the bar of a sister district court is not a condition to membership of the bar of this court, which requires membership "in good standing in the District of Columbia Bar" or membership "in good standing of the Bar of any state in which [the attorney] maintains [his or her] principal law office."  D.D.C. Loc. Civ. R. 83.8(a).  Moreover, Mr. McRae's statement that he is not and never has been a member of the bar of the state of Maryland (Mot. at 3), appears to be at odds with the bar membership requirements of the U.S. District Court for the District of Maryland, which deems an individual who is 1) not a member of the Maryland Bar and 2) maintains "any law office in Maryland," not qualified for admission to the bar of that court.  D.Md. Loc. R. 701(d).  Mr. McRae's address is in Largo, Maryland.  (Mot. at 1).

filing.  The court's review confirms that there is no basis for reconsideration.  Plaintiffs argue that the Fourth Amended Complaint "provides new facts regarding the status of Plaintiffs as employees of the District."[5]  (Mot. at 4).  Plaintiffs now allege that they "feel that they are employees not independent contractors" of the District of Columbia and therefore sufficiently allege an employment relationship, which is a predicate to liability under the ADEA.  (4th Am. Compl. ¶¶ 37-38).  The economic realities test for such a relationship instructs the court to examine "the extent of the employer's right to control the means and manner of the worker's performance" and

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual worked; (5) the method of payment; (6) the manner in which the work relationship terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays for social security taxes; and (11) the intention of the parties.

(Opinion at 12-13) (internal citations and quotations omitted).

The proposed 4th Amended Complaint purports to allege the requisite control by pointing to a number of factors.  (4th Am. Compl. ¶¶ 39-40).[6]  The Plaintiffs allege that the District did

---

[5] The Fourth Amended Complaint avers that changes were made only to the ADEA claim at Count I.  (4th Am. Compl. at 1 n.1).

[6] "The District thru [sic] the PCR (by micro managing every action and plan envisioned by ADTI), Case Managers (by randomly and arbitrarily sometimes engaging with individuals in a manner inconsistent with the ISP and the best interest of the individual), Training (by determining necessary training modalities, without always having clarity of the effect on the individuals) and Incident Reporting systems (by making incident judgments that are not always supported by the facts, especially where no District employee was present at the incident); essentially controls Plaintiff thru [sic] oversight, and the District thru [sic] random programmatic reviews insist [sic] on specific direction as to how Plaintiff must complete daily task [sic] – including the assignment of work to Plaintiff's employees.  Lastly the District has the authority to terminate ADTI.

In the instant case, common law control, as contemplated by *Redd* [*v. Summers*, 232 F.3d 933 (D.C. Cir. 2000)], is as follows: (1) ADTI's occupation required a highly specialized skill set done in this case by professional [sic], inclusive of supervision; (2) skill required – specialized training for working with individuals with intellectual and

not "furnish the place of work the equipment used and place of work," that the Plaintiffs "have worked in this field for over twenty years," that "the method of payment is by job," "no annual leave is offered," no retirement benefits are accumulated, and that D.C. does not pay social security taxes for the Plaintiffs.  (4th Am. Compl. ¶ 40).  These factors weigh against an employment relationship.  *Redd*, 232 F.3d at 940 (noting that employment relationships "tend to be longer or at any rate more likely of indefinite length, to afford annual leave and retirement payments, and to assign payment of social security taxes to the employer.  Payment by time period suggests employment; payment by product suggests an independent contractor relation"). Similarly, Plaintiffs' allegations that the work requires specialized skills and training tip in favor of no employment relationship.  *Id.* at 939; *Zhengxing v. Nathanson*, 215 F. Supp. 2d 114, 118 (D.D.C. 2002) (possession of specialized knowledge demonstrates independent contractor status).  Plaintiffs do conclusorily allege that the "work relationship is unfairly arbitrarily terminated by the employer, sometimes without notice or explanation" and the "District intends to control the means and manner in which Plaintiffs performs its work."  (4th Am. Compl. ¶ 40). These allegations, which assume the premise they purport to support, do not outweigh the rest of the factors and do not transform the "exacting regulatory burden" associated with providing treatment to vulnerable populations into an employment relationship.  *New Vision Photo. Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 26 (D.D.C. 2014).

---

developmental disabilities, Plaintiff has a Ph.D.; (3) herein – the employer does not furnish the place of work the equipment used and place of work; (4) Plaintiffs have worked in this field for over twenty years; (5) the method of payment is by job – sic, by individual participating in Plaintiff's program; (6) the work relationship is unfairly arbitrarily terminated by the employer, sometimes without prior notice or explanation; (7) no annual leave is offered; (8) Plaintiff's work is the foundation of the business of the 'District/employer'; (9) Plaintiff/worker does not accumulate retirement benefits; (10) District/employer does not pay social security taxes; and (11) it appears, that the District intends to control the means and manner in which Plaintiff performs its work, thus intends that Plaintiffs be employees."  (4th Am. Compl. ¶¶ 39-40).

The District here is acting much like the Puerto Rican Ports Authority alleged to be the employer of ship pilots in *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 577 (1st Cir. 2004).  The Circuit there concluded that the Ports Authority, which did not "hire or fire harbor pilots, withholds no taxes from their earnings (which come wholly from the shipowners), pays no F.I.C.A. premiums, carries no workers' compensation insurance referable to them, affords them no paid vacations or other fringe benefits, and furnishes them no gear," was not the pilots' employer.  *Id.*; *see also George v. N.J. Bd. of Veterinary Med. Examiners*, 794 F.2d 113, 114 (3d Cir. 1986) (Title VII "is not applicable to the licensing functions of a public agency exercised under the police powers of a state.").  Because the Fourth Amended Complaint does not contain allegations sufficient to plausibly state an employment relationship, the court discerns no error warranting reconsideration of its decision to deny leave to file the Fourth Amended Complaint.

Even assuming Plaintiffs' new allegations could suffice, the court dismissed Plaintiffs' ADEA claims for two independent reasons: failure to adequately allege an employment relationship and failure to exhaust administrative remedies.  (Opinion at 12-16).  Plaintiffs' failure to exhaust administrative remedies, which persists in the Fourth Amended Complaint, is fatal to their complaint, regardless of the existence of an employment relationship.  Plaintiffs' apparent contention that "a determination of Plaintiffs [sic] status must be made, prior to filing with the EEOC," is without support.  (4th Am. Compl. at 1 n.1).  Presentation of the claim for administrative remedy includes a determination, *by the EEOC*, that there is or is not an employment relationship.  *See, e.g.*, *Hill v. Holder*, EEOC DOC 0120121735, 2012 WL 3878930, at *2 (Aug. 24, 2012) (applying common law agency test to determine employment relationship); *Baker v. Harvey*, EEOC DOC 01A45313, 2006 WL 755933, at *1 (Mar. 16, 2006)

(same).  Failure to present this complaint for resolution by the EEOC bars the claim here.

(Opinion at 15-16).

Given that there is no reason for reconsideration, the motion (ECF No. 52) is DENIED.[7]

The Clerk of Court is directed to mail a copy of this Order to Plaintiffs and Plaintiffs'

counsel, certified mail, return receipt requested.

Dated: July 27, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[7] Several hours after filing their motion for reconsideration, Plaintiffs filed a notice of appeal.  (ECF No. 53). Ordinarily, "the filing of a notice of appeal is an event of jurisdictional significant – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  Rule 4(a) of the Federal Rules of Appellate Procedure provides that a notice of appeal does not become effective until the district court judge rules on a previously-filed timely motion for reconsideration under Rule 59 or Rule 60.  Fed. R. App. P. 4(a); *Johnson v. Lewis*, No. 06-cv-22, 2007 WL 106524, at *1 (D.D.C. Jan. 12, 2007).  As discussed above in note 2, the court construes the pending motion as one brought under Rule 59 or 60 within 28 days of the entry of judgment. Accordingly, the notice of appeal is not effective until entry of this order.